1  Robert D. Brugge, Bar No. 92532
   rdb@kpclegal.com
2  Barbara Ciolino, Bar No. 145730
   bcm@kpclegal.com
3  KNAPP, PETERSEN & CLARKE
   550 North Brand Boulevard, Suite 1500
4  Glendale, California 91203-1922
   Telephone:  (818) 547-5000
5  Facsimile:  (818) 547-5329

6  Attorneys for Plaintiff and Counter-defendant
   THE CITY OF ONTARIO
7

8              UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

10

11 THE CITY OF ONTARIO, a California        )  NO.   5:20-cv-02279-JGB-SPx
   Municipality,                            )
12                                          )  Date:              June 28, 2021
              Plaintiff,                    )  Time:              9:00 a.m.
13                                          )  Ctrm:                         1
        v.                                  )
14                                          )  The Hon.:          Jesus G. Bernal
   ALLIED WORLD ASSURANCE                   )  Date Action Filed:  October 30, 2020
15 COMPANY (U.S.), a Delaware               )  Trial Date:          July 12, 2022
   Corporation; SECURITY NATIONAL           )
16 INSURANCE COMPANY, a Delaware            )  THE CITY OF ONTARIO'S
   Corporation,                             )  MEMORANDUM OF POINTS AND
17                                          )  AUTHORITIES IN SUPPORT OF
              Defendants.                   )  ITS MOTION FOR SUMMARY
18 _____ )  JUDGMENT OR PARTIAL
                                            )  SUMMARY JUDGMENT AGAINST
19 ALLIED WORLD NATIONAL                    )  ALLIED WORLD ASSURANCE
   ASSURANCE COMPANY,                       )  COMPANY
20                                          )
              Counter-claimant,             )  [Filed concurrently with Notice of
21                                          )  Motion; Separate Statement of
        v.                                  )  Uncontroverted Facts and Conclusions
22                                          )  of Law; Joint Stipulations of Facts
   THE CITY OF ONTARIO,                     )  Vol. 1-6; Index of Additional
23                                          )  Evidence; Compendium of
              Counter-defendant.            )  Authorities;  [Proposed] Judgment;
24 _____ )  [Proposed] Order]
                                            )
25 SECURITY NATIONAL INSURANCE             )
   COMPANY,                                 )
26                                          )
              Counterclaimant & Cross-      )
27            Claimant,                     )
                                            )
28      v.                                  )

                              -1-

4802334.1  06051/00002

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ........................................................................... 2

II.   BACKGROUND ............................................................................ 5

   A.   The City Issued an Encroachment Permit for the IEUA's Contractor, Rasic, to Perform Emergency Repairs in the City's Public Right-of-Way ................................................. 5

   B.   Certificate of Insurance .......................................................... 7

   C.   An Accident at Rasic's Site Leads to Spicer Action ............. 8

   D.   The Travelers Primary Policy ................................................ 8

   E.   The Allied World Umbrella Policy ........................................ 9

      1.   Allied World's Coverage Grant .................................... 9

      2.   The City as an Insured ................................................ 10

      3.   The Allied World Policy's Coverage for Rasic's Potential Liability to the City ..................................... 12

   F.   Allied World's Failure to Acknowledge its Indemnity Limits and Coverage for the City Stymied Settlement of the Spicer action ......................................................................... 13

   G.   The Declaratory Judgment Claims between the City and Allied World ........................................................................... 14

III.   ARGUMENT ............................................................................... 14

   A.   The Court May Issue a Summary Judgment to Resolve Indemnity Issues Where Necessary to Facilitate Settlement of Underlying Litigation ........................................................ 14

   B.   The City Qualifies as an Insured under the Allied World Policy ....................................................................................... 16

   C.   Allied World Insures the City and Allied World's Full $25 Million in Limits Apply ........................................................ 19

      1.   The limits-reduction clause upon which Allied World relies by its terms apply only to the second relevant "insured" definition ......................................... 19

      2.   Buried provisions that purport to reduce the limits or eliminate coverage for the City are unenforceable as a matter of law .............................................................. 21

      3.   The insurance clause in the permit itself presented only a floor, not a ceiling ............................................ 23

KNAPP,
PETERSEN
& CLARKE

-i-

4802334.1  06051/00002

## <u>TABLE OF CONTENTS (cont.)</u>

<u>Page</u>

D.   Regardless of Whether the City Qualifies as an Insured, the Court Should Declare that Allied World Covers Rasic for any Indemnity Obligation it May Have to the City  up to Its Full $25 Million in Limits...................................................................24

IV.   CONCLUSION ...........................................................................26

KNAPP,
PETERSEN
& CLARKE

4802334.1  06051/00002

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acceptance Ins. Co. v. Syufy Enterprises*
  69 Cal.App.4th 321 (1999) ............................................................................. 17

*Am. Guar. & Liab. Ins. Co. v. Norfolk Southern Ry. Co.*,
  278 F.Supp.3d 1025 (E.D. Tenn. 2017) ...................................................... 4, 23

*Armstrong World Indus., Inc. v. Aetna Cas. & Surety Co.*,
  45 Cal.App.4th 1 (1996) .......................................................................... 4, 15, 24

*Bank of the West v. Super. Ct.*,
  2 Cal.4th 1254 (1992) ..................................................................................... 18

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................ 14

*Edwards v. Arthur Andersen LLP*,
  44 Cal.4th 937 ................................................................................................ 18

*Eureka Federal Sav. & Loan Ass'n v. American Cas. Co.*,
  873 F.2d 229 (9th Cir. 1989) ................................................................. 4, 14, 15

*Haynes v. Farmers Ins. Exch.*,
  32 Cal.4th 1198 (2004) ...................................................... 3, 4, 20, 21, 22, 23

*MacKinnon v. Truck Ins. Exchange*,
  31 Cal.4th 635 (2003) ..................................................................................... 20

*Musgrove* v. *The Southland Corp.*,
  898 F.2d 1041 (5th Cir. 1990) ........................................................................ 23

*Norfolk Southern Ry. Co. v. Nat'l Union Fire Ins. Co.*,
  999 F.Supp.2d 906 (S.D.W.Va. 2014) ....................................................... 4, 23

*North East Ins. Co. v. Masonmar, Inc.*,
  2013 WL 2474682 (E.D. Cal. 2013) ...................................................... 4, 14, 15

KNAPP,
PETERSEN
& CLARKE

4802334.1  06051/00002

1
2

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

3
4

*Spicer v. W.A. Rasic Construction Company, Inc. et al.*,
San Bernardino Superior Court No. CIVDS1711812
..................................................................................8, 13, 14, 15, 16, 24, 25, 26

5
6

**STATUTES**

7

Cal.Civil Code
§ 1643 ............................................................................................................ 18

8
9

**MISCELLANEOUS**

10

Fed. R. Civ. P. 56........................................................................................... 14

11
12

Ontario Municipal Code
§ 7-3.04 ....................................................................................................5, 17

13

San Bernardino County Code
§ 51.0112 ........................................................................................................ 5
§ 51.0113 ...................................................................................................5, 17

14

15
16
17
18
19
20
21
22
23
24
25
26
27
28

KNAPP,
PETERSEN
& CLARKE

4802334.1  06051/00002

THE CITY OF ONTARIO )
)
    Counterdefendant, )
)
and ALLIED WORLD NATIONAL )
ASSURANCE COMPANY, )
)
    Cross-defendant. )
_____ )

MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is an insurance coverage dispute arising from an underlying personal injury lawsuit stemming from a vehicle vs. motorcycle accident near a construction site.  The Inland Empire Utilities Agency (the "IEUA") had contracted with W.A. Rasic Construction Company, Inc. ("Rasic") to repair a manhole cover on a city street.  Rasic in turn applied to the City of Ontario (the "City") for a permit allowing it to encroach upon the public street to perform the requested repairs.  As required by the permit application and the permit itself, Rasic agreed to indemnify the City, have the City added as an additional insured on Rasic's policy of general liability coverage, and produce a certificate of insurance evidencing such insurance.  The insurance evidenced was a primary policy from Travelers Indemnity Company of Connecticut ("Travelers"), with $2 million in limits, and an umbrella policy from Allied World Assurance Company (U.S.) ("Allied World"), with $25 million in limits. As was also required, the certificate identified the City as an additional insured.

While Rasic was working on the manhole cover, a motorcyclist collided with an auto near the worksite and suffered major injuries.  He and his spouse allege Rasic, the IEUA, and the City, which had merely issued Rasic a permit, are liable for their damages.  The underlying action is calendared for a May 2021 trial in San Bernardino Superior Court. The underlying plaintiffs' last demand was $27 million, a sum within Travelers' and Allied World's combined limits, but settlement efforts

1  have collapsed because Allied World refuses to acknowledge its policy's $25 million

2  in coverage certified to the City.  While Allied World concedes the City qualifies as

3  an "insured" under its $25 million policy, it nonetheless contends its policy contains

4  limits-reduction clauses that either eliminates coverage for the City entirely, i.e.,

5  "reducing" limits by $25 million, or limits it to $1 million, i.e., reducing limits by

6  $24 million.

7      As a result of Allied World's refusal, the City has filed this suit seeking a

8  judicial determination that Allied World's policy provides the $25 million certified

9  and identified in its policy so that the underlying action can settle prior to the

10  looming trial.  Were the City forced to contribute toward a settlement prior to this

11  Court's determination, the City would be forced to spend millions within its own

12  insurance retention from a public treasury already strained to the limit by the ongoing

13  Covid crisis.

14      Judgment in the City's favor is appropriate here because Allied World's

15  claimed limits-reduction clause does not have the effect Allied Word contends it

16  does for the following reasons.

17      First, the initial insuring clause of the Allied World policy defines "insured" to

18  include "any person or organization, other than the Named Insured [Rasic], included

19  as an additional insured under Scheduled Underlying Insurance [the Travelers

20  policy]." The City qualifies as such an insured, because it is an additional insured

21  under the political subdivisions permit coverage of Travelers' Contractor's Xtend

22  Endorsement.  The Allied World umbrella policy contains no limits-reduction

23  clauses relevant to the City under that definition of "insured."

24      Second, even if the limits-reduction clause was relevant to the Contractor's

25  Xtend Endorsement's political subdivision coverage, any purported reduction would

26  be unenforceable under the California Supreme Court's decision *Haynes v. Farmers*

27  *Ins. Exch.,* 32 Cal.4th 1198 (2004).  The court in Hayes held limits-reduction clauses

28  must be conspicuous, plain and clear and not, like Allied World's, buried deep in its

1  policy's fine print.

2        Third, even if the limits-reduction clause was enforceable, and had not run

3  afoul of *Haynes*, it would not apply here because it depends upon limits not found in

4  the City's permit. The permit requires insurance of "not less than" $1 million as

5  opposed to limits of $1 million.  The permit thus sets a floor on insurance, and not a

6  cap, as held in *Norfolk Southern Ry. Co. v. Nat'l Union Fire Ins. Co.,* 999 F.Supp.2d

7  906 (S.D.W.Va. 2014) and *Am. Guar. & Liab. Ins. Co. v. Norfolk Southern Ry. Co.,*

8  278 F.Supp.3d 1025 (E.D. Tenn. 2017) discussed below.  Because Rasic's own

9  agreement to indemnify the City has no limit at all, Rasic obtained $25 million in

10  coverage.

11        Rasic's $25 million in coverage is the reason the City has also asked Allied

12  World to confirm that, if indeed the City prevails on its underlying cross-complaint

13  for contractual-indemnity against Rasic, then Allied World will cover Rasic for that

14  obligation up to $25 million.  Again, Allied World has refused to confirm. The City

15  is thus compelled to ask the Court for one more declaration confirming Rasic's

16  policy does indeed insure Rasic against the City's contractual-indemnity claim up to

17  $25 million.

18        To the extent this Court questions its jurisdiction to issue a declaratory

19  judgment deciding issues of indemnity before the outcome of the underlying

20  litigation, the Ninth Circuit has specifically recognized a prompt declaratory

21  judgment is warranted where settlement of underlying litigation has been stymied by

22  disputes over the calculation of available indemnity limits.  See, *Eureka Federal Sav.*

23  *& Loan Ass'n v. American Cas. Co.*, 873 F.2d 229 (9th Cir. 1989), accord *North East*

24  *Ins. Co. v. Masonmar, Inc.*, 2013 WL 2474682 (E.D. Cal. 2013), both addressed

25  below.  This Court may also properly assume the named insured's liability in the

26  underlying action so as to decide the amount of available coverage.  *Armstrong*

27  *World Indus., Inc. v. Aetna Cas. & Surety Co.,* 45 Cal.App.4th 1, 109 (1996).  The

28  Court has both the power and duty to make the judgment requested. Moreover, if the

KNAPP,
PETERSEN
& CLARKE

-4-

1  Court accepts the City's arguments its declaration will render moot those sought in
2  Allied World's counterclaims resulting in their dismissal.

3      Finally, even in the event the Court concludes that it cannot issue relief on any
4  one of the declarations the City has requested, the City respectfully asks that the
5  Court grant partial summary judgment as to those declarations on which it can issue
6  relief.

7                    **II. BACKGROUND**

8  **A.   The City Issued an Encroachment Permit for the IEUA's Contractor,**
9  **      Rasic, to Perform Emergency Repairs in the City's Public Right-of-Way**

10      In August 2016, the IEUA contracted with Rasic to perform emergency repairs
11  to a sewer manhole cover in a public street.  (City's Separate Statement of
12  Uncontroverted Facts and Conclusions of Law ("SUF") No. 1.)  The repairs required
13  Rasic to perform work in, and excavate a portion of, Grove Avenue near its
14  intersection with G Street located in the City, County of San Bernardino, California.
15  (SUF No. 2.)

16      Ontario Municipal Code § 7-3.04 requires anyone who wishes to perform
17  work within or encroaching upon public rights-of-way to obtain a permit before
18  beginning such work.  (SUF No. 3.)  Subdivision (e)(2) of section 7-3.04 authorizes
19  the City to cancel permits if the permittee fails to comply with permit conditions.
20  (SUF No.4.) Subdivision (k)(1) of section 7-3.04 provides: "By accepting the permit,
21  the permittee agrees to be bound by all the terms and conditions set forth in the
22  permit and in this chapter." (SUF No. 5.)   Section 2 of the City's Adopting
23  Ordinance No. 2716 incorporates the San Bernardino County Code.  (SUF No. 6.)
24  San Bernardino County Code § 51.0112 authorizes imposition of conditions on
25  issuance of permits.  (SUF No. 7.)  San Bernardino County Code § 51.0113 requires
26  any permit applicant to sign a statement agreeing to "preserve and save harmless the
27  County … from any liability or responsibility for any accident, loss or damage to
28  persons … happening or occurring as a proximate result of his or her negligence or

KNAPP,
PETERSEN
& CLARKE

-5-

1   the negligence of his or her agents, servants, employees or contractors in the design

2   or performance of any work undertaken under any permit granted pursuant to the

3   application." (SUF No. 8.)

4       To perform its work for the IEUA, Rasic applied for an encroachment permit.

5   (SUF No. 9.)  The encroachment permit application contains a notice, located

6   immediately under the title "Encroachment Permit Application," that states the

7   application is made "In accordance with City of Ontario Municipal Code Chapter 7-

8   3.04."  (SUF No. 10.)  Near the top of Rasic's permit application, the instructions

9   clearly stated, "Contractor(s) must provide Liability Insurance Certificate naming the

10  City as additionally insured."  (SUF No. 11.)  On August 12, 2016, the City issued

11  encroachment permit number E2016007019.  (SUF No. 12.)  In a page entitled,

12  "Standard Conditions, Provisions, Conditions, Requirements and Specifications," the

13  permit states in part:

14      **C.      Insurance and Liabilities**

15      1.      With respect to performance of work under this

16      Permit, [Rasic] shall maintain … Commercial General

17      Liability Insurance … with a combined single limit *of not*

18      *less than* $1,000,000 per occurrence. Such insurance

19      containing an aggregate shall:  (1) include additional insured

20      endorsement naming the City of Ontario … as additional

21      insured; (2) be primary with respect to insurance or self-

22      insurance program maintained by the City of Ontario ….

23      [Rasic] shall:  (a) furnish properly executed certificate of

24      insurance and additional insured endorsements to the City of

25      Ontario prior to the commencement of work under this

26      Permit, which shall clearly evidence all coverages required

27      above … (b) maintain such insurance from time work first

28      commences until completion of the work under this Permit;

KNAPP,
PETERSEN
& CLARKE

-6-

2.      [Rasic] shall save, keep, and hold harmless the City of
Ontario … from all damages, costs or expenses in law or
equity that may at any time arise or be set up because of
damage to property, or of personal injury received by reason
of or in the course of performing work authorized by this
permit which may be occasioned by any act or omission of
[Rasic], his agents or employees.  The City of Ontario will
not be liable for any accident, loss, or damage to the work
prior to its completion or acceptance.

(SUF No. 13) [Emphasis added.]

**B.      Certificate of Insurance**

To comply with one of the City-imposed conditions necessary to obtain the permit, Rasic provided the City with a Certificate of Insurance (the "Certificate") dated August 12, 2016.  (SUF No. 14.)  The Certificate identified Rasic as the named insured under a general liability policy, DT22-CO-8670X247-TCT-16, issued by Travelers effective May 1, 2016 to May 1, 2017, with a per occurrence limit of $2 million and an aggregate limit of $4 million (the "Travelers Policy").  (SUF No. 15.) Significant to this matter, the Certificate also identified Umbrella Liability Insurance Policy number 0310-1155, effective May 1, 2016 to May 1, 2017, with an occurrence and aggregate limit of $25 million to Rasic as named insured (the "Allied World Policy.") (SUF No. 16.)  The Certificate identified the City as "Certificate Holder" and stated in part:

Re:  Permit
Certificate holder is named additional insured where
required **by issuance of a permit** as respects general
liability per attached CGD316 11/11 [Contractors Xtend
Endorsement].

KNAPP,
PETERSEN
& CLARKE

-7-

4802334.1  06051/00002

1   (SUF No. 17) [[Emphasis added.][1]

2   **C.     An Accident at Rasic's Site Leads to _Spicer_ Action**

3           On August 15, 2016, Jay Paul Spicer, plaintiff in the underlying action, was

4   riding his motorcycle at or near Grove Avenue and G Street in the City of Ontario

5   when it collided with a car that turned left in front of him, causing severe injuries to

6   him.  (SUF No. 20.)  The accident occurred within Rasic's job site near the

7   intersection of Grove Avenue and East G Street in the City of Ontario.  (See SUF

8   No. 2.)  On June 21, 2017, the underlying plaintiff and his wife, Maria Spicer, sued

9   the IEUA, Rasic, the City, and the driver of the vehicle that collided with him in an

10  action styled _Spicer v. W.A. Rasic Construction Company, Inc.  et al._, San

11  Bernardino Superior Court No. CIVDS1711812 (the "_Spicer_ action").  (SUF No. 21.)

12  The _Spicer_ plaintiffs alleged Rasic's failure to implement adequate traffic controls

13  created the hazard that led to the accident.  (SUF No. 22.)  The plaintiffs also alleged

14  the City shares liability for the dangerous condition created by Rasic because the

15  City had a nondelegable duty to ensure that proper traffic safeguards were in place.

16  (SUF No. 23.)

17  **D.     The Travelers Primary Policy**

18          Travelers agreed to defend the City as an additional insured under Travelers

19  Policy referenced in the Certificate of Insurance discussed above, with limits of $2

20  million.  (SUF No. 24.)  The policy's first insuring grant, Coverage A, provides

21  Travelers will pay damages because of "bodily injury" arising out of an

22  "occurrence."  (SUF No. 25.)  The policy defines "bodily injury" to include "bodily

23  injury, mental anguish, [and] … disability" and defines "occurrence" to mean an

24

25  [1] Typically Rasic would provide the City with a physical copy of the Contractor's
26  Xtend Endorsement form CGD316 11/11 with the encroachment application
    package.  (See Contractor's Xtend Endorsements for permit E20150111, issued
27  4/22/15, and permit E201700150, issued 3/07/17) (SUF No. 18).  While the file copy
    of the Contractor's Xtend Endorsement that would have been attached to the permit
28  application in issue cannot be located, the City expected and intended that the same
    Contractor's Xtend coverage form would apply.(SUF No. 19.)

KNAPP,
PETERSEN
& CLARKE

-8-

"accident."  (SUF No. 26.)

The Travelers policy includes a Contractors Xtend Endorsement—the endorsement listed in the certificate given to the City—that adds a series of extensions and enhancements, including a clause entitled "BLANKET ADDITIONAL INSURED – STATES OR POLITICAL SUBDIVISIONS-PERMITS." (SUF No. 27.)This clause extends coverage to "Any state or political subdivision that has issued a permit in connection with operations performed by you [Rasic] … and that you are required by any ordinance, law or building code to include as an additional insured on this Coverage Part is an insured …."  (SUF No. 28.)  Travelers, who issued this endorsement and who is defending the City has never disputed the City's qualification as an insured under this clause.  (SUF No. 29.)

The Travelers policy also contains a "Blanket Additional Insured (Contractors)" endorsement ("Travelers Blanket Endorsement") that extends coverage to any party that Rasic is required by written agreement to add as an additional insured.  (SUF No. 30.)  Travelers Blanket Endorsement extends coverage to an additional insured for liability for "bodily injury" to the extent it is caused by the acts or omission of Rasic, but not for the independent acts or omissions of the additional insured.  (SUF No. 31.)

**E.    The Allied World Umbrella Policy**

**1.    Allied World's Coverage Grant**

The Allied World's $25 million umbrella policy referenced in the Certificate schedules the Travelers Policy as its underlying insurance.  (SUF No. 32.)

The initial insuring clause of the Allied World policy provides:

> A.  We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to

KNAPP,
PETERSEN
& CLARKE

1  which this insurance applies or because of **Bodily Injury** or

2  **Property Damage** to which this insurance applies assumed

3  by the **Insured** under an **Insured Contract.**

4  (SUF No. 33.)

5  **2.**    **The City as an Insured**

6  Allied World's policy contains multiple definitions for the term "insured."

7  The City qualifies as an insured firstly under paragraph F.7 of the Allied

8  World policy. Under paragraph F.7, "insured" includes those entities who qualify as

9  an additional insured under the Travelers primary policy. (SUF no. 34.) Endorsement

10  26 amends paragraph 7 of Section VI., "Definitions" F., as follows:

11  B.    It is agreed that Section VI, "Definitions" F. **Insured,**

12  Paragraph 7, is deleted in its entirety and replaced by the

13  following:

14  7.    any person or organization, other than the **Named**

15  **Insured** [Rasic]**,** included as an additional insured in the

16  policies listed in **Scheduled Underlying Insurance** [the

17  Travelers policy] however:

18  a.    coverage will not be broader than is available to such

19  person or organization under such **Scheduled Underlying**

20  **Insurance** [the Travelers policy]; and

21  b.    the coverage granted by this provision does not apply

22  to any liability which results solely from the acts or

23  omissions of such person or organization.

24  [Emphasis orig.] (SUF No. 35.)

25  Travelers Policy, DT22-CO-8670X247-TCT-16, is among the policies listed in

26  Allied World's Schedule of Underlying Insurance. (SUF no. 36.) As discussed above

27  the City qualifies as an additional insured under the Travelers policy because it

28  qualifies as an insured under both  the "Contractors Xtend Endorsement" that

**KNAPP,
PETERSEN
& CLARKE**

-10-

extends coverage for any "political subdivision that has issued a permit in connection with operations performed by [Rasic]" (See SUF Nos. 27 and 28) and under the "Blanket Additional Insured (Contractors)" endorsement that extends coverage to any party that Rasic is required by written agreement to add as an additional insured. (See SUF No. 30.)

Independently, the City may qualify as an insured under an addition to the definition of "insured" pursuant to Endorsement No. 26.  Endorsement 26, at section C., provides:

> C.      It is agreed that Section VI. "Definitions" F. **Insured** is amended to include the following additional provision: Any person, organization, trustee or estate to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy, but only with respect to:
>
> a.      liability arising out of operations conducted by you or on your behalf;
>
> ***
>
> c.      liability arising solely from your acts or omission. However,
>
> ***
>
> 2)      the most we will pay for damages under this policy on behalf of any person or organization to which you are obligated by written **Insured Contract** to provide coverage such as is afforded by this endorsement is the lesser of the Limits of Insurance shown in Item 3. of the Declarations [$25 million] or the minimum Limits of Insurance you

KNAPP,
PETERSEN
& CLARKE

-11-

4802334.1   06051/00002

1   agreed to procure in such written **Insured Contract**. [2]

2   (SUF No.37.)

3   **3.    The Allied World Policy's Coverage for Rasic's Potential Liability**

4   **to the City**

5       As relates to the City's claim for contractual indemnity against Rasic, Allied

6   World agreed to pay sums in excess of the "retained limit" that Rasic becomes

7   legally obligated to pay because of liability for "bodily injury." (SUF No. 39.)

8   Allied World's Endorsement No. 26, "Contractors' Limitation (With Means and

9   Methods Exception," adds a qualified exclusion for contractual obligations such as

10  that owed by Rasic to the City, but then gives back that coverage if such contractual

11  liability is covered in the underlying Travelers policy:

12          **Contractors**

13          This policy does not provide coverage for:

14                          ***

15          6.      Any liability assumed by the **Insured** under any

16          contract or agreement.

17          However, if insurance for **Bodily Injury** or **Property**

18          **Damage** assumed by the **Insured** under any contract or

19          agreement is provided by **Scheduled Underlying Insurance**

20          [the Travelers policy]:

21          a.      Exclusion 6., above will not apply;

22

23  ———————————

24  [2] The Allied World Policy has a nearly identical limits reduction clause elsewhere in
    the policy to which the same infirmities discussed herein apply:

25          E.      … the most we will pay for damages under this
                    policy on behalf of any person or organization to whom

26          you are obligated by written **Insured Contract** to provide
                insurance such as is afforded by this policy is the lesser of

27          the Limits of Insurance shown in Item 3. of the
                Declarations or the minimum Limits of Insurance you

28          agreed to procure in such written **Insured Contract**.
    [Emphasis orig.](SUF No. 38.)

-12-

KNAPP,
PETERSEN
& CLARKE

1  [Emph. orig.] (SUF No. 40.)

2      The Travelers' primary policy itself contains a standard "insured contract"

3  exception to its contractual-liability exclusion defining "insured contract" to include

4  "[t]hat part of any ... contract or agreement pertaining to your business ... under

5  which you assume the tort liability of another ...."  (SUF No. 41.)

6  **F.   Allied World's Failure to Acknowledge its Indemnity Limits and**

7      **Coverage for the City Stymied Settlement of the *Spicer* action**

8      In May 2020, the *Spicer* plaintiffs served six separate statutory offers to

9  compromise their claims against all defendants in the underlying action for the

10  collective amount of $27 million, which was within the combined limits of the

11  Travelers and Allied World Policies.  (SUF No. 42.) The discrete settlement demands

12  to the City totaled $8 million. (SUF No. 43.)   The City demanded Allied World

13  authorize defense counsel to accept all six demands or, at the very least, accept the

14  two demands to the City that totaled $8 million.  (SUF No. 44.)  To facilitate

15  settlement, Travelers has offered to pay its $2 million per occurrence policy limits in

16  response to plaintiffs' 998s and settlement demands on behalf of Rasic, IEUA and

17  the City.  (SUF No. 45.)

18      Allied World has not agreed to pay the 998 demands totaling $8 million made

19  by plaintiffs to the City.  Instead, Allied World informed the City that it has coverage

20  of up to $1 million under both the Travelers Policy and the Allied World Policy in

21  the Underlying Action.  (SUF No. 46.) In refusing full coverage to a party qualifying

22  as an insured under paragraph F, Allied World relies the language in Section C of

23  Endorsement 26  quoted above that purports to limit coverage to "lesser of the Limits

24  of Insurance shown in Item 3. of the Declarations or the minimum Limits of

25  Insurance you agreed to procure in such written **Insured Contract."** [Emphasis

26  original.]  (SUF No. 47.) [3]

27  —————————————

28  [3] A similar limits provision is contained in Section III E. of the Allied World Policy. (SUF No. 48.)

KNAPP,
PETERSEN
& CLARKE

**G.      The Declaratory Judgment Claims between the City and Allied World**

On November 17, 2017, the City filed a cross-complaint for equitable indemnity, contribution, and declaratory relief against Rasic in the *Spicer* action.(SUF No. 49.)  Allied World has refused to acknowledge that its policy will cover Rasic's potential liability for contractual indemnity as expressed in the permit. (SUF No. 50.)

The City filed this suit in November 2020 seeking, *inter alia*, a declaration that Allied World must indemnify the City up to the full $25 million policy limits.  On December 10, 2020, Allied World answered and counterclaimed, asserting that it had no duty to indemnify the City, or that any indemnity obligation was subject to policy limits of $1 million.  On December 30, 2020, the City answered Allied World's counterclaim

## III. ARGUMENT

**A.      The Court May Issue a Summary Judgment to Resolve Indemnity Issues Where Necessary to Facilitate Settlement of Underlying Litigation**

Summary judgment is properly granted when no genuine and disputed issues of material fact exist and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  Here there is no dispute over the material facts.  Rather, the dispute centers on the City's legal contention that it is entitled to the full $25 million limits of Allied World's policy as an "insured" under the Allied World policy.  Allied World has acknowledged that the City qualifies as an additional insured but contends that its limits-reduction clauses eliminate that coverage.

Allied World's posture has blocked efforts to settle the *Spicer* action, rendering this dispute justiciable under *Eureka Federal Sav. & Loan Ass'n v. American Cas. Co.,* 873 F.2d 229 (9th Cir. 1989), accord *North East Ins. Co. v. Masonmar, Inc.,* 2013 WL 2474682 (E.D. Cal. 2013).  In *Eureka Federal*, the

KNAPP,
PETERSEN
& CLARKE

-14-

4802334.1  06051/00002

1   insureds also sought a declaration establishing the liability limits in their directors

2   and officers' policy to facilitate settlement.  873 F.2d at 230-231.  There was a

3   dispute over whether the policy limits were $20 million or $100 million.  *Id.*  The

4   Ninth Circuit reiterated the established rule that "declaratory relief is appropriate '(1)

5   when the judgment will serve a useful purpose in clarifying and settling the legal

6   relations in issue, and (2) when it will terminate and afford relief from the

7   uncertainty, insecurity, and controversy giving rise to the proceeding.'"  *Id.,* at 231

8   citing *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984).  Noting that

9   the insurer's settlement posture made settlement of the underlying action a virtual

10  impossibility without a declaration in the coverage action, the Ninth Circuit affirmed

11  the district court's grant of summary judgment in favor of the insureds.  *Id.* at 232.

12       Similarly, in *Masonmar*, the district court denied a motion to stay the insurer's

13  action that sought a declaration of the policy limits available to resolve an underlying

14  state court action.  2013 WL 2474682 at *1-2.  The court denied the motion because

15  "[d]eclaratory relief will serve a useful purpose by clarifying [the insurer and

16  insured's] respective liabilities, thereby increasing the chances of settlement" in a

17  case where it could be "impossible" to settle "if [the parties] continue to dispute the

18  applicable coverage limits."  *Id.* at *5.  California state courts have similarly granted

19  declaratory relief to resolve indemnity disputes where necessary to facilitate

20  settlement.  See e.g., *Armstrong World Indus., Inc. v. Aetna Cas. & Surety Co.,* 45

21  Cal.App.4th 1, 109 (1996) (finding no error in "trial court's declaration that [the

22  insured] is entitled to indemnification if [it] is held liable for the damages alleged in

23  the underlying complaints.")

24       The policy limits available to the City under its coverage as an "insured" under

25  the Allied World policy is a threshold issue that must be resolved in order to settle

26  the underlying *Spicer* case.  The City's own coverage under the policy issued by

27  defendant Security National is subject to a $5 million retention (SUF No. 45),

28  meaning that settlement would require the City to settle the City to advance millions

KNAPP,
PETERSEN
& CLARKE

-15-

1  in public resources at a time when the City—like virtually all public entities during

2  the current COVID crisis—is financially challenged.  The parties' disagreement

3  about Allied World's applicable limits has already blocked settlement in *Spicer*.  The

4  Court has jurisdiction to decide this dispute because a declaratory judgment will

5  serve to clarify the legal relations between the parties and promote settlement.

6  **B.**     **The City Qualifies as an Insured under the Allied World Policy**

7      Allied World has already acknowledged the City "potentially" qualifies as an

8  insured (SUF No. 42). While the City qualifies as an insured under more than one

9  "insured" definition found in the Allied World Policy, its clearest qualification is by

10 dint of being an additional insured under the underlying Traveler's policy.

11     Relevant to this motion, the City qualifies as an insured under paragraph F.7 of

12 the policy, as amended by Endorsement 26 at section C. (SUF No.37.) Pursuant to

13 the amended definition, "insured" includes "any person or organization, other than

14 the Named Insured [Rasic], included as an additional insured in the policies listed in

15 Scheduled Underlying Insurance." (SUF No. 35.)  As the City is an additional

16 insured under the Travelers policy, and as the Travelers policy appears in Allied

17 World's  schedule of underlying insurance (See SUF No. 36), the City qualifies as an

18 insured under the Allied World Policy.

19     Despite acknowledging the City's "potential" qualification as an insured,

20 Allied World has challenged the City's status as an additional insured under the

21 Travelers Policy. Allied World lacks factual and legal bases for doing so.

22     In terms of fact, there can be no genuine dispute that the City is an insured

23 under the Underlying Travelers policy, because the City qualifies as an insured under

24 the political subdivisions permit coverage provided in the Contractor's Xtend

25 Endorsement.  The City is a "political subdivision that has issued a permit in

26 connection with operations performed by [Rasic] … and that [Rasic is] required by

27 any ordinance, law or building code to include as an additional insured. . .  (See SUF

28 No. 28.)

KNAPP,
PETERSEN
& CLARKE

-16-

4802334.1  06051/00002

It is undisputed that the City had issued Rasic a permit (see SUF No. 12) It is undisputed that subdivision (k)(1) of Ontario Municipal Code section 7-3.04 provides that by "accepting the permit, the permittee agrees to be bound by all the terms and conditions set forth in the permit and in this chapter." (SUF No. 5.)   It is undisputed that section 2 of the City's Adopting Ordinance No. 2716 incorporates the San Bernardino County Code.  (SUF No. 6.)  It is undisputed that San Bernardino County Code § 51.0113 requires any permit applicant to sign a statement agreeing to "preserve and save harmless the County … from any liability or responsibility for any accident, loss or damage to persons … happening or occurring as a proximate result of his or her negligence or the negligence of his or her agents, servants, employees or contractors in the design or performance of any work undertaken under any permit granted pursuant to the application." (SUF No. 8.) It is undisputed that the permit application clearly stated, "Contractor(s) must provide Liability Insurance Certificate naming the City as additionally insured."  (SUF No. 11.) It is undisputed that pursuant to section "C.  Insurance and Liabilities" of the permit Rasic obtained, Rasic agreed, among other things, to maintain general liability insurance of not less than $1 million per occurrence and to include the City as an "additional insured." (SUF No. 13.)   Significantly, Travelers itself has already confirmed the City's status as an additional insured by agreeing to defend the City and offering Allied World its full $2 million policy limits to settle the Spicer action on behalf of the City and Rasic.  (SUF No. 45.)

Despite Travelers' acknowledgment, Allied World quibbles that the Contractor's Xtend Endorsement does not apply because the City's ordinances do not expressly use the words "additional insured." Allied World's interpretation is overly restrictive, given section 7-3.04's mandate that all permittees accept the terms and conditions of the permit, and unsupported by rules of insurance policy interpretation. An additional insured endorsement is construed broadly to afford coverage to the additional insured. *See Acceptance Ins. Co. v. Syufy Enterprises* 69 Cal.App.4th 321,

326-329 (1999).  Courts "interpret the language in context, with regard to its intended function in the policy."  *Bank of the West v. Super. Ct.*, 2 Cal.4th 1254, 1265 (1992).  The intended function of Travelers' language, plain from its face, is to fulfill Rasic's insurance obligations when applying for public permits, as demonstrated by Rasic's provision of certificates of insurance that identify the City as "Certificate Holder" "where required by issuance of a permit …"  (SUF No. 17.) Moreover, the City would not have issued the encroachment permit if Rasic had not provided the Certificate demonstrating that Rasic complied with its obligation to name the City as an additional insured under Rasic's own liability policies. (SUF No. 32.)

Under a reasonable interpretation of the words used, the additional insured requirement was pursuant to "ordinance, law or building code," as the ordinance mandates that the permittee be bound by the terms and conditions of the permit which, in turn, clearly includes the requirement that the City be made an additional insured.

It is a tenet of contract interpretation that if "'a contract is capable of two constructions courts are bound to give such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect...'" [Citations.]" *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 953–954(2008); Cal.Civil Code § 1643. If Allied World's overly restrictive interpretation was adopted, the City could never be an additional insured under the endorsement which is contrary to the intent of Rasic and Travelers and contrary to the expectation of the City when issuing the permit containing the requirement.

///

///

///

///

///

**KNAPP,**
**PETERSEN**
**& CLARKE**

-18-

**C.** **Allied World Insures the City and Allied World's Full $25 Million in Limits Apply**

    **1.** **The limits-reduction clause upon which Allied World relies by its terms apply only to the second relevant "insured" definition.  It does not purport to limit coverage under the first relevant definition of "insured"**

As previously noted, the City is an insured by virtue of paragraph F.7 of the Allied World policy that was amended by Endorsement 26 Section B to include "any person or organization, other than the Named Insured [Rasic], included as an additional insured in the policies listed in Scheduled Underlying Insurance [the Travelers policy]." (SUF No. 35.)  *Independent* of this insured definition, the City also qualifies as an insured under Endorsement 26 section "C" that amends paragraph F *to add* as an "insured" "Any person, organization, trustee or estate to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy."  (SUF No.37.)

Allied has conflated these two definitions in an attempt to claim the reduction clause contained in the Section  C definition of insured applies to the definition in Section B of the endorsement which contains no limits reduction.  However, the Section B definition of insured is separate and apart from Section C. Section B has no limits language whereas the Section C definition provides:

However,

\*\*\*

2)      the most we will pay for damages under this policy on behalf of any person or organization to which you are obligated by written **Insured Contract** to provide coverage such as is afforded by this endorsement is the lesser of the Limits of Insurance shown in Item 3. of the Declarations [$25 million] or the minimum Limits of Insurance you

KNAPP, PETERSEN & CLARKE

1       agreed to procure in such written **Insured Contract**

2   (SUF No 37.)

3    Allied World's argument ignores several realities.  While the minimum limits

4 provision may be relevant to the City's status as an insured by virtue of section C of

5 Endorsement 26, i.e., insured pursuant to an insured contract, it has no applicability

6 to the City's status as an insured pursuant to Section B. as entity which is an

7 additional insured under the Schedule of Underlying Insurance (the Traveler's

8 policy.)

9    Again, section C does not purport to replace any definition of insured but

10 instead *adds to*, or provides an *alternate definition of*, "insured." Section C does not

11 change the coverage afforded to the City by virtue of its being an additional insured

12 on the scheduled underlying policy. The minimum limits provision does not contain

13 any language specific to entities, like the City, that independently qualify as insureds

14 by virtue of their additional insured status in underlying polices. The City is an

15 insured under the Travelers policy because of the political subdivision permit

16 provisions in that policy which has no coverage limitation. As discussed in detail in

17 the next section, "any provision that takes away or limits coverage reasonably

18 expected by an insured must be 'conspicuous, plain and clear.'" *Haynes v. Farmers*

19 *Ins. Exch*., 32 Cal.4th 1198, 1206 (2004) citing *Steven v. Fidelity & Casualty Co*. 58

20 Cal.2d 862, 878 (1962); see also *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635,

21 648 (2003) ["insurance coverage is 'interpreted broadly so as to afford the greatest

22 possible protection to the insured, [whereas] ... exclusionary clauses are interpreted

23 narrowly against the insurer. '" (citations omitted.)]

24    That the City and Rasic reasonably expected coverage in limits of $25 million

25 as evidenced in the certificate of liability insurance held by the City pertaining to

26 encroachment permit number E2016007019,  not to mention previous certificates

27 from Rasic. (SUF Nos. 15-19.)

28 ///

**KNAPP,**
**PETERSEN**
**& CLARKE**

-20-

**2.    Buried provisions that purport to reduce the limits or eliminate coverage for the City are unenforceable as a matter of law**

Even if Allied World's limits-reduction clauses by their terms had applied to the first relevant definition of insured found in Section B of endorsement 26, it would be unenforceable.  The California Supreme Court has confirmed that slipping such purported reductions unobtrusively into a policy renders the reduction or elimination of indemnity limits under a limits-reduction clause unenforceable as a matter of law. *Haynes v. Farmers, supra,* 32 Cal.4th at 1206.

In *Haynes,* Farmers issued an auto-liability policy providing $500,000 in limits of insurance, per occurrence.  To that policy it attached an endorsement entitled "PERMISSIVE USER LIMITATION."  In "its penultimate paragraph (lines 15–17)" the endorsement, similar to Allied World's paragraph E here, stated:  "We will provide insurance for an Insured person, other than you, a family member or a listed driver, but only up to the minimum required limits of your state's Financial Responsibility Law of $15,000 per person and $30,000 per occurrence for bodily injury, and $5,000 for property damage."  *Id.* at 1203.

After a permissive user caused an accident while driving an insured auto, Farmers invoked the reduced-limits clause and the claimant sued for a declaration that the clause was unenforceable.  The California Supreme Court reversed a summary judgment that had been entered for Farmers, explaining that "to be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and clear;'" to do so it "must be placed and printed so that it will attract the reader's attention." *Id.* at 1204.  Finding Farmers' permissive-user limitation unenforceable, the court found "nothing in the heading to alert a reader that it limits permissive user coverage, nor anything in the section to attract a reader's attention to the limiting language." *Id.* at 1204.  The *Haynes* court noted, again similar to the Allied World policy, that "the definition of the insured, appearing at the outset of the liability section, gives every indication that a

1  permissive driver stands in the same position as the insured and receives the same

2  coverage," whereas the limiting language is "surrounded by language that has

3  nothing to do with exclusions or limitations on coverage." *Id.* at 1206, quoting

4  *Jauregui v. Mid–Century Ins. Co.,* 1 Cal.App.4th 1544, 1549-1550 (1991).

5      Significantly, the *Haynes* court noted that "no reason appears why the actual

6  dollar coverages for permissive users could not have been placed with the policy

7  coverages on the declarations page, where one would expect an insured to look to

8  determine the policy limits," and that "nothing on the declarations page alerts a

9  reader to the fact that endorsement S9064 contains a paragraph limiting coverage for

10 permissive users to amounts less than the policy coverages." 32 Cal.4th at 1206.

11     The *Haynes* court further noted that the limits-reduction clause before it was

12 "not bolded, italicized, enlarged, underlined, in different font, capitalized, boxed, set

13 apart, or in any other way distinguished from the rest of the fine print." *Id.* at 1207,

14 quoting *Thompson v. Mercury Cas. Co.,* 84 Cal.App.4th 90, 97 (2000).  .

15     The deficiencies identified in *Hayes* are apparent here.   Allied World's

16 declarations say nothing about lower limits for insureds other than Rasic itself nor

17 warns about such limitations in Section C of Endorsement 26. (SUF No.37)  Allied

18 World limits-reduction clauses are not conspicuously placed in a manner that would

19 have alerted either Rasic or the City to their presence.  Certainly there was nothing

20 inherent in Endorsement No. 26, titled "Contractors' Limitation (With Means &

21 Methods Exception)," that would have alerted Rasic that Allied World could argue,

22 by virtue of an additional insured definition, that coverage limits to the City should

23 be reduced by $24 million.[4]

24     Allied World's position is facially meritless as a matter of law and would strip

25 the City of the protection that the named insured, Rasic, bargained and paid for as a

26

27 [4] Allied World's current pleading appears to suggest that it would provide $1 million
   in coverage and instead eliminate $24 million.  (ECF No. 24 [ICOE Exh. 18],
28 Answer ¶ 12, Counterclaim ¶¶ 21-24.)

-22-

1  condition of obtaining an encroachment permit from the City. It would also strip the

2  City of the protection that it sought by conditioning issuance of the permit on Rasic's

3  agreement to add the City as an insured under its policies.

4         **3.**   **The insurance clause in the permit itself presented only a floor, not**

5                 **a ceiling**

6      Even if Allied World was justified in relying on the alternative definitions of

7  insured in section C of endorsement and even if Allied World's reduced-limits clause

8  were not unenforceable under *Haynes v. Farmers, supra,* 32 Cal.4th 1198, Allied

9  World's refusal to provide coverage is still meritless. The language of Rasic's

10  permit, the Insured Contracts as defined, required Rasic to obtain insurance of "not

11  less than" $1 million for the City.  (SUF No. 12.)

12      It is "faulty reasoning that 'not less than' is a cap" on an obligation to procure

13  insurance. *Norfolk Southern Ry. Co. v. Nat'l Union Fire Ins. Co.,* 999 F.Supp.2d 906,

14  911-912 (S.D.W.Va. 2014) (the "Lease Agreement does not establish a cap on the

15  insurance Cobra is to obtain" and the "other cases cited by Westchester employ

16  Westchester's faulty reasoning that 'not less than' is a cap on Cobra's obligation"),

17  rejecting *Musgrove* v. *The Southland Corp.,* 898 F.2d 1041, 1044 (5th Cir. 1990).  To

18  the contrary, "[a] plain reading of [such] provision requires a policy limit floor, not a

19  ceiling: that is to say, it requires a minimum of $2 million policy limits, not a

20  maximum of that amount."  *Am. Guar. & Liab. Ins. Co. v. Norfolk Southern Ry. Co.,*

21  278 F.Supp.3d 1025, 1045 (E.D. Tenn. 2017).

22      By using the phrase "not less than," this provision creates nothing more than a

23  floor on the insurance that Rasic was required to secure.  Nothing in the permit

24  prohibited Rasic from securing additional insurance and it was logical for Rasic to do

25  so to offset its unlimited contractual-indemnity obligation to the City.  That explains

26  why Rasic delivered a Certificate of Insurance showing the City insured up to

27  combined limits of $27 million.  Allied World is obligated to honor its promise and

28  acknowledge indemnity for the City up to its policy's announced limits of $25

KNAPP,
PETERSEN
& CLARKE

-23-

1   million.

2   **D.      Regardless of Whether the City Qualifies as an Insured, the  Court**

3          **Should Declare that Allied World Covers Rasic for any Indemnity**

4          **Obligation it May Have to the City  up to Its Full $25 Million in Limits**

5          Even if the City were not entitled to such coverage, however, the terms of the

6   City's permit also require Rasic to indemnify the City for all liability arising out of

7   Rasic's operations.  (SUF No. 12.)  No limit applies to Rasic's potential liability to

8   the City.  The City was not actively involved in the events that led to the Spicer

9   accident and thus contends that Rasic must fully indemnify the City in the event the

10  City is held liable.  In that event, the City further contends that Allied World must

11  cover Rasic's indemnity obligation up to Allied World's $25 million policy limits.

12  Allied World has refused to acknowledge its duty to cover Rasic's potential

13  indemnity obligations to the City, thereby again frustrating settlement discussions.

14  (SUF No. 50.)  Therefore, the City seeks a declaration that Allied World must insure

15  Rasic in the event the City prevails on its indemnity claim in the *Spicer* action.

16          Importantly, the issue of whether Allied World must cover Rasic's indemnity

17  obligation to the City is distinct from the issue of liability for that obligation in the

18  *Spicer* action.  Regardless of the outcome of the Rasic-indemnity dispute, the

19  coverage issue is ripe here.  This case is like *Armstrong World Industries*, where the

20  court held that, "for purposes of deciding the coverage dispute, the trial court

21  properly looked to the allegations of the underlying complaints and assumed [the

22  insured] would be held liable for the damages alleged therein."  *Armstrong World*

23  *Industries, supra,* 45 Cal.App.4th at 109.  That court thus found no error in the "trial

24  court's declaration that [the insured] is entitled to indemnification if [it] is held liable

25  for the damages alleged in the underlying complaints."  *Id.*  This Court should

26  likewise assume, for purposes of determining coverage, that Rasic will be required to

27  indemnify the City against liability in the *Spicer* action and declare whether Rasic's

28  obligation is covered  under the Allied World policy.

KNAPP,
PETERSEN
& CLARKE

-24-

And covered it is.  The Allied World policy covers "sums … that [Rasic] becomes legally obligated to pay as damages by reason of liability imposed by law because of  Bodily Injury  . . . to which this insurance applies or because of  Bodily Injury . . . assumed by [Rasic] under an Insured Contract.  (SUF No. 33.)

The permit here is an "insured contract" as defined as it is an "agreement . . . under which 'Rasic' assumes the tort liability of another party [the City] to pay for Bodily Injury to a third person or organization."(SUF No. 35.)  As set forth in the permit, Rasic agreed to "save, keep, and hold harmless the City of Ontario … from all damages, costs or expenses in law or equity . . . because  . . .of personal injury received by reason of or in the course of performing work authorized by this permit. . . ." (SUF No. 13)

As noted above, Endorsement No. 26, "Contractors' Limitation (With Means and Methods Exception," adds a qualified exclusion for contractual obligations such as that owed by Rasic to the City, but then gives back that coverage if such contractual liability is covered in the underlying Travelers policy:

> However, if insurance for **Bodily Injury** or **Property Damage** assumed by the **Insured** under any contract or agreement is provided by **Scheduled Underlying Insurance** [the Travelers policy]:
>
> a.    Exclusion 6., above will not apply;

(SUF No. 40.)

In the *Spicer* action, the City seeks indemnity from Rasic based upon Rasic's indemnity agreement as expressed in the permit.  (SUF No. 12.)  The permit requires Rasic to indemnify the City against liability "because … of personal injury by reason of or in the course of performing work under this permit which may be occasioned by any act or omission of [Rasic]."  (SUF No. 12.)The underlying plaintiffs allege that one of them suffered injuries as the result of an accident that occurred by reason of Rasic's work under the permit.  (SUF No. 17.) Exclusion 6 will not apply because

KNAPP,
PETERSEN
& CLARKE

-25-

The City is an insured under the Scheduled Underlying Insurance [Traveler's Policy]. Thus if the City prevails on its indemnity cross-complaint against Rasic in the *Spicer* action, Rasic will be required to indemnify the City against liability because of the bodily injuries suffered by *Spicer*.

## IV. CONCLUSION

The City qualifies as an additional insured under the Allied World policy with a policy limit of $25 million. Allied World's putative limits-reduction clause by its terms does not apply to insureds like the City that qualify under Allied World's first definition of "insured," definition F.7 as amended by Endorsement 26, Section B (incorporating insureds from the Travelers primary policy).The limitation only applies to insureds meeting the alternate definition of "insured" in Section C of .Endorsement 26. Moreover, even if the limits-reduction clause had applied to the first relevant definition of "insured," any purported reduction of the policy limit is unenforceable because it was not clear or conspicuous.

Finally, there can be no dispute that Allied World insures Rasic's contractual-indemnity obligation to the City up to $25 million. The City therefore respectfully requests entry of a summary judgment declaring that the Allied World policy would provide up to $25 million in coverage to the City, should it prevail against Rasic, for Rasic's contractual-indemnity obligation to the City.

Dated: May 19, 2021                KNAPP, PETERSEN & CLARKE

By: _____
                Robert D. Brugge
                Barbara Ciolino
                Attorneys for Plaintiff and Counter-
                defendant THE CITY OF
                ONTARIO

4802334.1  06051/00002