1 | Robert D. Brugge, Bar No. 92532
rdb@kpclegal.com
2 | Barbara Ciolino, Bar No. 145730
bcm@kpclegal.com
3 | KNAPP, PETERSEN & CLARKE
550 North Brand Boulevard, Suite 1500
4 | Glendale, California 91203-1922
Telephone:  (818) 547-5000
5 | Facsimile:  (818) 547-5329

6 | Attorneys for Plaintiff and Counter-defendant
THE CITY OF ONTARIO

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

10

11 | THE CITY OF ONTARIO, a California Municipality,

NO.   5:20-cv-02279-JGB-SPx

12 | Plaintiff,

Date:                     June 28, 2021
Time:                    9:00 a.m.

13 | Ctrm:                              1

v.

14 | Judge:              Jesus G. Bernal
Date Action Filed:   October 30, 2020

ALLIED WORLD ASSURANCE
15 | COMPANY (U.S.), a Delaware
Corporation; SECURITY NATIONAL

SEPARATE STATEMENT OF
UNCONTROVERTED FACTS AND

16 | INSURANCE COMPANY, a Delaware
Corporation,

CONCLUSIONS OF LAW IN
SUPPORT OF THE CITY OF

17 | Defendants.

ONTARIO'S MOTION FOR
SUMMARY JUDGMENT OR

18

PARTIAL SUMMARY JUDGMENT
AGAINST ALLIED WORLD

19 | ALLIED WORLD NATIONAL
ASSURANCE COMPANY,

ASSURANCE CO. (U.S.)

20 | Counter-claimant,

21

v.

22 | THE CITY OF ONTARIO,

23 | Counter-defendant.

24

25 | SECURITY NATIONAL INSURANCE
COMPANY,

26

Counterclaimant & Cross-
27 | Claimant,

28 | v.

KNAPP,
PETERSEN
& CLARKE

4766304.1  06051/00002



1  THE CITY OF ONTARIO                        )
                                              )
2              Counterdefendant,              )
                                              )
3  and ALLIED WORLD NATIONAL                  )
   ASSURANCE COMPANY,                         )
4                                             )
               Cross-defendant.               )
5  _____ )

6

7          Pursuant to Central District of California Local Rule 56-1 and this Court's

8  December 29, 2020 Standing Order (ECF No. 30), plaintiff and counter-defendant

9  the City of Ontario (the "City"), submits the following Separate Statement of

10 Uncontroverted Facts and Conclusions of Law in support of its concurrently-filed

11 Motion for Summary Judgment or Partial Summary Judgment against Allied World

12 Assurance Co.

13 ///

14 ///

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

**KNAPP,
PETERSEN
& CLARKE**

## STATEMENT OF UNCONTROVERTED FACTS

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 1. In August 2016, the Inland Empire Utilities Agency ("IEUA") contracted with W.A. Rasic Construction Company, Inc. ("Rasic") to perform emergency repairs to a sewer manhole cover in a public street. | Joint Stipulation of Facts in Support of Motions for Summary Judgment by the City of Ontario and Allied World National Assurance Company ("Joint Stipulation of Facts"), Vol. 1, ¶ 2, at pp. 2 and 3. |
| 2. The repairs required Rasic to perform work in and excavate a portion of Grove Avenue near its intersection with G Street located in the City, County of San Bernardino, California. | Joint Stipulation of Facts, Vol. 1, ¶ 3 at p. 3. |
| 3. Ontario Municipal Code § 7-3.04 requires anyone who wishes to perform work within or encroaching upon public rights-of-way to obtain a permit before beginning. | Joint Stipulation of Facts, Vol. 1, ¶ 5 and Exhibit 2 attached thereto at pp. 3 and 19. |
| 4. Subdivision (e)(2) of section 7-3.04 authorizes the City to cancel permits if the permittee fails to comply with permit conditions. . | Joint Stipulation of Facts, Vol. 1, ¶ 5 and Exhibit 2 attached thereto at pp. 3 and 19. |
| 5. Subdivision (k)(1) of section 7-3.04 provides: "By accepting the permit, the permittee agrees to be bound by all the terms and conditions set forth | Joint Stipulation of Facts, Vol. 1, ¶ 5 and Exhibit 2 attached thereto at pp. 3 and 20. |

KNAPP, PETERSEN & CLARKE

4766304.1  06051/00002

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| in the permit and in this chapter." | |
| 6.   Section 2 of the City's Adopting Ordinance No. 2716 incorporates the San Bernardino County Code. | Joint Stipulation of Facts, Vol.1, ¶ 5 and Exhibit 3 attached thereto at pp. 3 and 23. |
| 7.   San Bernardino County Code § 51.0112 authorizes imposition of conditions on issuance of permits. | Joint Stipulation of Facts, Vol.1, ¶ 5, and Exhibit 4 attached thereto at pp. 3 and 27. |
| 8.   San Bernardino County Code § 51.0113 requires any permit applicant to sign a statement agreeing to "preserve and save harmless the County … from any liability or responsibility for any accident, loss or damage to persons … happening or occurring as a proximate result of his or her negligence or the negligence of his or her agents, servants, employees or contractors in the design or performance of any work undertaken under any permit granted pursuant to the application." | Joint Stipulation of Facts, Vol.1, ¶ 5, and Exhibit 5 attached thereto at pp. 3 and 29. |
| 9.   To perform its work for the IEUA, Rasic applied for an encroachment permit. | Joint Stipulation of Facts, Vol. 1, ¶ 4, at p. 3. |
| 10.  The encroachment permit application | Joint Stipulation of Facts, Vol. 1, ¶ 4, |

KNAPP,
PETERSEN
& CLARKE

-4-

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| contains a notice, located immediately under the title "Encroachment Permit Application," that states "In accordance with City of Ontario Municipal Code Chapter 7-3.04." | and Exhibit 1 attached thereto at pp. 3 and 13. |
| 11. Near the top of Rasic's permit application, the instructions state, "Contractor(s) must provide Liability Insurance Certificate naming the City as additionally insured." | Joint Stipulation of Facts, Vol. 1, ¶ 4, and Exhibit 1 attached thereto at pp. 3 and 13. |
| 12. On August 12, 2016, the City issued encroachment permit number E2016007019 (the "Permit"). | Joint Stipulation of Facts, Vol. 1, ¶ 4. |
| 13. In a page entitled, "Standard Conditions, Provisions, Conditions, Requirements and Specifications," the permit states in part:<br><br>**C. Insurance and Liabilities**<br><br>1.  With respect to performance of work under this Permit, the applicant shall maintain … Commercial General liability Insurance … with a combined single limit *of not less than* $1,000,000 per occurrence. Such insurance containing an aggregate | Joint Stipulation of Facts, Vol. 1, ¶ 4, and Exhibit 1 attached thereto at pp. 3 and 9. |

**KNAPP,
PETERSEN
& CLARKE**

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| shall:  (1) include additional insured endorsement naming the City of Ontario … as additional insured; (2) be primary with respect to insurance or self-insurance program maintained by the City of Ontario ….  [Rasic] shall:  (a) furnish properly executed certificate of insurance and additional insured endorsements to the City of Ontario prior to the commencement of work under this Permit, which shall clearly evidence all coverages required above … (b) maintain such insurance from time work first commences until completion of the work under this Permit; 2.  [Rasic]shall save, keep, and hold harmless the City of Ontario … from all damages, costs or expenses in law or equity that may at any time arise or be set up because of damage to property, or of personal injury received by reason of or in the course of | |

KNAPP,
PETERSEN
& CLARKE

4766304.1  06051/00002

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| performing work authorized by this permit which may be occasioned by any act or omission of [Rasic], his agents or employees.  The City of Ontario will not be liable for any accident, loss, or damage to the work prior to its completion or acceptance. <br><br> [Emphasis added.] | |
| 14.  To comply with one of the City-imposed conditions necessary to obtain the permit, Rasic provided the City with a Certificate of Insurance dated August 12, 2016. | Declaration of Antonio Alejos ("Alejos Decl.) at ¶ 5 and Exhibit 21 attached to the City of Ontario's Index of Additional Evidence in Support of Its Motion for Summary Judgment or Partial Summary Judgment ("Ontario's IAE") at pp. 5 and 8. |
| 15.  The Certificate identified Rasic as the named insured under a general liability policy, DT22-CO-8670X247-TCT-16, issued by Travelers effective May 1, 2016 to May 1, 2017, with a per occurrence limit of $2 million and an aggregate limit of $4 million (the "Travelers Policy"). | Alejos Decl. at ¶¶ 5 and 6 and Exhibit 21, attached to Ontario's IAE at pp. 5 and 8. |
| 16.  The Certificate also identified | Alejos Decl. at ¶ 5 and Exhibit 21 |

KNAPP,
PETERSEN
& CLARKE

| | **UNCONTROVERTED FACT** | **SUPPORTING EVIDENCE** |
|---|---|---|
| | Umbrella Liability Insurance Policy number 0310-1155, effective May 1, 2016 to May 1, 2017, with an occurrence and aggregate limit of $25 million to Rasic as named insured (the "Allied World Policy."). | attached to Ontario's IAE at pp. 5 and 8. |
| 17. | The Certificate of Insurance identified the City as "Certificate Holder" and stated in part: Re:  Permit Certificate holder is named additional insured where required by **issuance of a permit** as respects general liability per attached CGD316 11/11. | Alejos Decl. at ¶ 5 and Exhibit 21, attached to Ontario's IAE at pp. 5 and 8. |
| 18. | Typically Rasic would provide the City with a physical copy of the Contractor's Xtend Endorsement form CGD316 11/11 with the encroachment application package. | Alejos Decl. at ¶¶ 7 and 8 and Exhibits 22 and 23 attached to Ontario's IAE at pp. 5, 6, 18, and 43. |
| 19. | While the file copy of the Contractor's Xtend Endorsement that would have been attached to the permit application in issue cannot be located, the City expected and intended that the same Contractor's Xtend coverage form would apply. | Alejos Decl. at ¶ 6 to Ontario's IAE at p.5. |

KNAPP,
PETERSEN
& CLARKE

-8-

| | **UNCONTROVERTED FACT** | **SUPPORTING EVIDENCE** |
|---|---|---|
| 20. | On August 15, 2016, Jay Paul Spicer, plaintiff in the underlying action, was riding his motorcycle at or near Grove Avenue and G Street in the City of Ontario when it collided with a car that turned left in front of him, causing severe injuries to him. | Joint Stipulation of Facts, Vol. 1, ¶ 6, at p. 6. |
| 21. | On June 21, 2017, the underlying plaintiff and his wife, Maria Spicer, sued the IEUA, Rasic, the City, and the driver of the vehicle that collided with him in an action styled *Spicer v. W.A. Rasic Construction Company, Inc. et al.*, San Bernardino Superior Court No. CIVDS1711812 (the "*Spicer* action"). | Joint Stipulation of Facts, Vol.1, ¶ 9, at p. 4 and Exhibit 8 attached thereto, Vol. 6, at p. 340. |
| 22. | The *Spicer* plaintiffs alleged Rasic's failure to implement adequate traffic controls created the hazard that led to the accident. | Joint Stipulation of Facts, Vol.1, ¶ 9, at p. 4 and Exhibit 8 at ¶ 9 attached thereto at p. 342. |
| 23. | The plaintiffs also alleged that the City shares liability for the dangerous condition created by Rasic because the City had a nondelegable duty to ensure that proper traffic safeguards were in | Joint Stipulation of Facts, Vol.1, ¶ 9, at p. 4 and Exhibit 8 at ¶ 35 attached thereto at p. 348. |

KNAPP,
PETERSEN
& CLARKE

| | **UNCONTROVERTED FACT** | **SUPPORTING EVIDENCE** |
|---|---|---|
| | place. | |
| 24. | Travelers agreed to defend the City as an additional insured under Travelers Policy referenced in the Certificate of Insurance. | Joint Stipulation of Facts, Vol.1, ¶ 14, at p. 5; Declaration of Robert D. Brugge ("Brugge Decl.") at ¶ 2 and Exhibit 25 attached to Ontario's IAE at pp. 55 and 57; Declaration of Karen Feld at ¶ 4 and Exhibit 24 attached to Ontario's IAE at pp. 49 and 51. |
| 25. | The policy's first insuring grant, Coverage A, provides Travelers will pay damages because of "bodily injury" arising out of an "occurrence." | Joint Stipulation of Facts, Vol 1, ¶ 7, pp. 3-4 and Travelers Policy, Exhibit 6 at pp. 48 and 49. |
| 26. | The policy defines "bodily injury" to include "bodily injury, mental anguish, [and] … disability" and defines "occurrence" to mean an "accident." | Joint Stipulation of Facts, Vol 1, ¶ 7, pp. 3-4; Exhibit 6 [Section V at 13 of Travelers Policy], at p. 62 and Vol 3 [Contractors Xtend Endorsement of Travelers Policy], Vol 3 at p. 111. |
| 27. | The Travelers policy includes a "Contractors Xtend Endorsement"—the endorsement listed in the certificate given to the City—that adds a series of extensions and enhancements, including a clause entitled "BLANKET ADDITIONAL INSURED – STATES OR | Joint Stipulation of Facts, Vol 1, ¶ 7, pp. 3-4; Exhibit 6[Contractors Xtend Endorsement of Travelers Policy], Vol 3, at p. 106 and 109-110. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KNAPP, PETERSEN & CLARKE**

| **UNCONTROVERTED FACT** | **SUPPORTING EVIDENCE** |
|---|---|
| POLITICAL SUBDIVISIONS-PERMITS." | |
| 28.  This clause extends coverage to "Any state or political subdivision that has issued a permit in connection with operations performed by you [Rasic] … and that you are required by any ordinance, law or building code to include as an additional insured on this Coverage Part is an insured …." | Joint Stipulation of Facts, Vol 1, ¶ 7, pp. 3-4; Exhibit 6 [Contractors Xtend Endorsement of Travelers Policy], Vol 3, at p. 109-110. |
| 29.  Travelers, who issued this endorsement and who is defending the City has never disputed the City's qualification as an insured under this clause. | Joint Stipulation of Facts, ¶ 7, Vol. 1, pp. 3-4; Brugge Decl. at ¶ 2 and Exhibit 25 attached to Ontario's IAE at pp. 55 and 57; Declaration of Karen Feld at ¶ 4 and Exhibit 24 attached to Ontario's IAE at pp. 49 and 51. |
| 30.  The Travelers policy also contains a "Blanket Additional Insured (Contractors)" endorsement ("Travelers Blanket Endorsement") that extends coverage to any party that Rasic is required by written agreement to add as an additional insured. | Joint Stipulation of Facts, Vol 1, ¶ 7, pp. 3-4; Exhibit 6 [Blanket Additional Insured (Contractors) Endorsement of Travelers Policy], Vol 3, at p. 104-105. |
| 31.  Travelers Blanket Endorsement | Joint Stipulation of Facts, Vol 1, ¶ 7, |

KNAPP,
PETERSEN
& CLARKE

-11-

4766304.1  06051/00002

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| extends coverage to an additional insured for liability for "bodily injury" to the extent it is caused by the acts or omission of Rasic, but not for the independent acts or omissions of the additional insured. | pp. 3-4; Exhibit 6 [Blanket Additional Insured (Contractors) Endorsement of Travelers Policy], Vol 3, at p. 104. |
| 32.  The Allied World's $25 million umbrella policy referenced in the Certificate schedules the Travelers policy as its underlying insurance. | Joint Stipulation of Facts, Vol 1, ¶ 8, p. 4, Exhibit 7 [Allied World Policy], Vol. 6, p.264. |
| 33.  The initial insuring clause of the Allied World policy provides:<br><br>A.  We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**. | Joint Stipulation of Facts, Vol 1, ¶ 8, p. 4, Exhibit 7 [Allied World Policy], Vol. 6, p. 314. |
| 34.  Under paragraph F.7 of the Allied | Joint Stipulation of Facts, Vol 1, ¶ 8, |

KNAPP, PETERSEN & CLARKE

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| World policy, "insured" includes those entities who qualify as an additional insured under the Travelers primary policy. | p. 4, Exhibit 7 [Allied World Policy], Vol. 6, pp. 332-333. |
| 35.  Endorsement 26 amends paragraph 7 of Section VI., "Definitions" F., as follows:<br><br>B.      It is agreed that Section VI, "Definitions" F. **Insured**, Paragraph 7, is deleted in its entirety and replaced by the following:<br><br>7.      any person or organization, other than the **Named Insured** [Rasic]**,** included as an additional insured in the policies listed in **Scheduled Underlying Insurance** [the Travelers policy] however:<br><br>a.      coverage will not be broader than is available to such person or organization under such **Scheduled Underlying Insurance** [the Travelers policy]; and<br><br>b.      the coverage granted by this provision does not apply to any | Joint Stipulation of Facts, Vol 1, ¶ 8, p. 4, Exhibit 7 [Allied World Policy], Vol. 6, pp. 296 and 297. |

KNAPP,
PETERSEN
& CLARKE

-13-

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| liability which results solely from the acts or omissions of such person or organization.<br><br>[Emphasis original.] | |
| 36.   Travelers Policy, DT22-CO-8670X247-TCT-16, is among the policies listed in Allied World's Schedule of Underlying Insurance. | Joint Stipulation of Facts, Vol 1, ¶ 8, p. 4, Exhibit 7 [Allied World Policy], Vol. 6, p.264. |
| 37.   Independently, the City may qualify as an insured under an addition to the definition of "insured" pursuant to Endorsement No. 26.  Endorsement 26, at section C., provides:<br><br>C.      It is agreed that Section VI. "Definitions" F. **Insured** is amended to include the following additional provision:<br><br>Any person, organization, trustee or estate to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy, but only with respect to:<br><br>a.      liability arising out of | Joint Stipulation of Facts, Vol 1, ¶ 8, p. 4, Exhibit 7 [Allied World Policy], Vol. 6, pp.  297-298. |

KNAPP,
PETERSEN
& CLARKE

-14-

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| operations conducted by you or on your behalf; <br><br> *** <br><br> c.    liability arising solely from your acts or omission. <br><br> However, <br><br> *** <br><br> 2)    the most we will pay for damages under this policy on behalf of any person or organization to which you are obligated by written **Insured Contract** to provide coverage such as is afforded by this endorsement is the lesser of the Limits of Insurance shown in Item 3. of the Declarations [$25 million] or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract**. | |
| 38.   The Allied World Policy has a nearly identical limits reduction clause elsewhere in the policy to which the same infirmities discussed herein apply: | Joint Stipulation of Facts, Vol 1, ¶ 8, p. 4, Exhibit 7 [Allied World Policy], Vol. 6, p. 317. |

KNAPP,
PETERSEN
& CLARKE

-15-

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| E.      … the most we will pay for damages under this policy on behalf of any person or organization to whom you are obligated by written **Insured Contract** to provide insurance such as is afforded by this policy is the lesser of the Limits of Insurance shown in Item 3. of the Declarations or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract**.<br><br>[Emphasis original.] | |
| 39.   As relates to the City's claim for contractual indemnity against Rasic, Allied World agreed to pay sums in excess of the "retained limit" that Rasic becomes legally obligated to pay because of liability for "bodily injury." | Joint Stipulation of Facts, Vol 1, ¶ 8, p. 4, Exhibit 7 [Allied World Policy], Vol. 6, p. 314. |
| 40.   Allied World's Endorsement No. 26, "Contractors' Limitation (With Means and Methods Exception," adds a qualified exclusion for contractual obligations such as that owed by Rasic to the City, but then gives back that coverage if such | Joint Stipulation of Facts, Vol 1, ¶ 8, p. 4, Exhibit 7 [Allied World Policy], Vol. 6, p. 296 -297. |

KNAPP,
PETERSEN
& CLARKE

-16-

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| contractual liability is covered in the underlying Travelers policy:<br><br>**Contractors**<br><br>This policy does not provide coverage for:<br><br>      \*\*\*<br><br>6.     Any liability assumed by the **Insured** under any contract or agreement.<br><br>However, if insurance for **Bodily Injury** or **Property Damage** assumed by the **Insured** under any contract or agreement is provided by **Scheduled Underlying Insurance** [the Travelers policy]:<br><br>a.     Exclusion 6., above will not apply;<br><br>[Emphasis original.] | |
| 41.    The Travelers' primary policy itself contains a standard "insured contract" exception to its contractual-liability exclusion defining "insured contract" to include "[t]hat part of any ... contract | Joint Stipulation of Facts, Vol 1, ¶ 7, pp. 3-4 and Travelers Policy, Exhibit 6 at p. 49 and Vol 2 at p.61. |

KNAPP,
PETERSEN
& CLARKE

-17-

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| or agreement pertaining to your business ... under which you assume the tort liability of another ....” | |
| 42. In May 2020, Maria Spicer and Jay Spicer served six separate statutory offers to compromise their claims, against all defendants in the underlying action for the collective amount of $27 million, which was within the combined limits of the Travelers and Allied World Policies. | Joint Stipulation of Facts, Vol 1, ¶ 15, at p.15; Exhibits 14-19, Vol. 6 at pp. 418-446; Exhibit 7 [Allied World Policy], Vol.6, pp. 260 and 264. |
| 43. The discrete settlement demands to the City totaled $8 million. | Joint Stipulation of Facts, Vol 1¶ 15, Vol. 1, p.5, Exhibits 16 and 19, Vol. 6, pp. 428-446. |
| 44. The City demanded that Allied World authorize defense counsel to accept all six demands, or at the very least, accept the two demands to the City that totaled $8 million. | Joint Stipulation of Facts, ¶ 17, Vol. 1, p.5. |
| 45. To facilitate settlement, Travelers has offered to pay its $2 million per occurrence policy limits in response to plaintiffs' 998s and settlement demands on behalf of Rasic, IEUA and the City. | Joint Stipulation of Facts, ¶ 18, Vol. 1, p. 5; Brugge Decl. at ¶ 2 and Exhibit 25 attached to Ontario's IAE at p. 55 and 57. |

KNAPP,
PETERSEN
& CLARKE

-18-

| **UNCONTROVERTED FACT** | **SUPPORTING EVIDENCE** |
|---|---|
| 46.   Allied World has not agreed to pay the 998 demands totaling $8 million made by plaintiffs to the City. Instead, Allied World informed the City that it has coverage of up to $1 million under both the Travelers Policy and the Allied World Policy in the Underlying Action. | Joint Stipulation of Facts, ¶ 19, Vol. 1, p. 5; Brugge Decl. at ¶ 3 and Exhibit 26 attached to Ontario's IAE at pp. 55 and 59 -62. |
| 47.   In refusing coverage to a party qualifying as an insured under paragraph F, Allied World relies the language in Section C of Endorsement 26  quoted above that purports to limit coverage to "lesser of the Limits of Insurance shown in Item 3. of the Declarations or the minimum Limits of Insurance you agreed to procure in such written **Insured Contract."**<br><br>[Emphasis original.] | Allied World's Sixth Affirmative Defense, Allied World's Answer and Counterclaim filed in this action [Dkt.24] |
| 48.   A similar limits provision is contained in Section III E. of the Allied World policy. | Joint Stipulation of Facts at ¶ 8, Vol. 1, p. 4; Exhibit 8 [Allied World's Policy], Vol. 6, p.317. |
| 49.   On November 17, 2017, the City filed a cross-complaint for equitable | Joint Stipulation of Facts at ¶ 12, Vol. 1, pp. 4-5; Exhibit 13, Vol. 6 at p. |

**KNAPP, PETERSEN & CLARKE**

4766304.1  06051/00002

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| indemnity, contribution, and declaratory relief against Rasic in the *Spicer* action. | 408. |
| 50.   Allied World has refused to acknowledge that its policy will cover Rasic's potential liability for contractual indemnity as expressed in the permit. | Joint Stipulation of Facts at ¶ 20, Vol. 1, p.6; Allied World's Answer and Counterclaim filed in this action at ¶¶ 12 and 22 [Dkt.24] |

## CONCLUSIONS OF LAW

**ISSUE NO. 1:**

An insurance coverage dispute presents a justiciable controversy where, as here, uncertainty over the availability and scope of coverage has interfered with efforts to settle the underlying case. *Eureka Federal Sav. & Loan Ass'n v. American Cas. Co.,* 873 F.2d 229 (9th Cir. 1989), accord *North East Ins. Co. v. Masonmar, Inc.,* 2013 WL 2474682 at *4 (E.D. Cal. 2013). "[D]eclaratory relief is appropriate '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Eureka Federal, supra*, 873 F.2d at 231 citing *Bilbrey by Bilbrey v. Brown,* 738 F.2d 1462, 1470 (9th Cir.1984).

**ISSUE NO. 2:**

Orders granting declaratory relief to resolve indemnity disputes are appropriate to facilitate settlement. See e.g., *Armstrong World Indus., Inc. v. Aetna Cas. & Surety Co.,* 45 Cal.App.4th 1, 109 (1996) (finding no error in "trial court's declaration that [the insured] is entitled to indemnification if [it] is held liable for the damages alleged in the underlying complaints.")

KNAPP, PETERSEN & CLARKE

-20-

**ISSUE NO. 3:**

The City qualifies as an insured under the political subdivisions permit coverage provided in Travelers Contractor's Xtend Endorsement, because the City is a "political subdivision that has issued a permit in connection with operations performed by [Rasic] … and that [Rasic is] required by any ordinance, law or building code to include as an additional insured. It is unnecessary for the Ontario Municipal Code § 7-3.04 to use the word "additional insured."  Subdivision (k)(1) of section 7-3.04 expressly binds the permit holder to make the City and additional insured by stating : "By accepting the permit, the permittee agrees to be bound by all the terms and conditions set forth in the permit and in this chapter."  An additional insured endorsement is construed broadly to afford coverage to the additional insured.  *See Acceptance Ins. Co. v. Syufy Enterprises* 69 Cal.App.4th 321, 326-329 (1999).  Courts "interpret the language in context, with regard to its intended function in the policy.*"  Bank of the West v. Super. Ct*., 2 Cal.4th 1254, 1265 (1992). The intended function of Travelers' language, plain from its face, is to fulfill Rasic's insurance obligations to name the City as an additional insured under Rasic's own liability policies. Even if this provision could be interpreted as Allied claims, it is a tenet of contract interpretation that if "'a contract is capable of two constructions courts are bound to give such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect...'' [Citations.]" *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 953–954(2008); Cal.Civil Code § 1643.

**ISSUE NO. 4:**

Allied World cannot demonstrate that the limits reduction clause in Section C of Endorsement 26 applies to reduce coverage provided to the City as an "insured" under Section B of Endorsement 26.  The "insured" definition under each section operates independently of the other. Even if the limits reduction clause was applicable, slipping a purported reduction clause unobtrusively into a policy, would

KNAPP,
PETERSEN
& CLARKE

-21-

1  make it  unenforceable under the California Supreme Court's decision in *Haynes v.*

2  *Farmers Ins. Exch.,* 32 Cal.4th 1198 (2004) (limits-reduction clause for additional

3  insured held unenforceable under virtually identical circumstances because they were

4  not sufficiently conspicuous).  The limits reduction clause is unenforceable because

5  it does not appear in Allied World Policy's declaration setting out limits and is not

6  separately labeled and headed as reducing limits.  Instead it is in an endorsement

7  entitled "Contractors' Limitation (with means and methods exception.)"

8  **ISSUE NO. 5:**

9      The limit reduction clause cannot effectively reduce policy limits for the City

10 because the clause depends upon language in the City's permit requiring insurance of

11 "not less than" $1 million.  This provision sets only a floor on insurance and not a

12 cap.  *Norfolk Southern Ry. Co. v. Nat'l Union Fire Ins. Co.,* 999 F.Supp.2d 906, 911-

13 912  (S.D.W.Va. 2014) and *Am. Guar. & Liab. Ins. Co. v. Norfolk Southern Ry. Co.,*

14 278 F.Supp.3d 1025, 1045 (E.D. Tenn. 2017).  Allied World must indemnify the City

15 up to the full $25 million limits of the policy.

16 **ISSUE NO. 6:**

17     The Permit requires Rasic to indemnify the City for all liability arising out of

18 Rasic's operations. If the City prevails on its cross-complaint for express indemnity

19 against Rasic, Allied World is obligated to provide coverage to Rasic for its liability

20 to the City up to the Allied World Policy's full policy limits. The Permit is an

21 Insured Contract, as defined by the Allied World Policy, and exclusion 6 found in

22 Endorsement 26 is inapplicable because of the exception to that exclusion, i.e.,

23 similar coverage is available to Rasic under Allied Worlds' "Scheduled Underlying

24 Insurance," the Travelers Policy.  . The coverage issue regarding coverage for

25 indemnity is ripe here.  The Court may "properly look[] to the allegations of the

26 underlying complaints and assum[e] [the insured] would be held liable for the

27 damages alleged therein" and issue a declaration that "[the insured] is entitled to

28 indemnification if [it] is held liable for the damages alleged in the underlying

KNAPP,
PETERSEN
& CLARKE

1    complaints." *Armstrong World Industries, supra*, 45 Cal.App.4th at 109.

2    Dated:  May 19, 2021                    KNAPP, PETERSEN & CLARKE

3

4                                            By: _____

5                                                 Robert D. Brugge
                                                  Barbara Ciolino
6                                                 Attorneys for Plaintiff and Counter-
                                                  defendant THE CITY OF
7                                                 ONTARIO

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KNAPP,
PETERSEN
& CLARKE

4766304.1   06051/00002